RUVALCABA ROMERO
LAWYERS
1082 East Meta Street
VENTURA, CALIFORNIA 93001
TEL. (805) 233-3273
FAX. (805) 275-1061

(SPACE BELOW FOR FILING STAMP ONLY)

SANDRA R. ROMERO, State Bar No. 253275

Attorneys for ___Plaintiff_____

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUILLERMO GUERRERO, an Individual;<br><br><br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF ALAMEDA; ALAMEDA COUNTY SHERIFF'S DEPARTMENT; THE SHERIFF OF THE ALAMEDA COUNTY SHERIFF'S DEPARTMENT, GREGORY J. AHERN; DEPUTY SHERIFF G. STEVENS; and DOES 1 through 10, Inclusive,<br><br>Defendants. | Case Number 3:18-cv-02379<br><br>**PLAINTIFF'S           AMENDED COMPLAINT FOR DAMAGES**<br><br>1.  **PERSONAL INJURY (BATTERY)**<br>2.  **PERSONAL INJURY (NEGLIGENCE)**<br>3.  **VIOLATIONS OF CIVIL CODE SECTION 52.1**<br>4.  **ASSAULT**<br>5.  **VIOLATIONS OF CIVIL RIGHTS (42 USC § 1983)— INDIVIDUAL LIABILITY UNDER FOURTH AMENDMENT**<br>6.  **VIOLATIONS OF 42 USC § 1983–ENTITY LIABILITY-OFFICIAL POLICY**<br>7.  **VIOLATIONS OF 42 USC § 1983-ENTITY LIABILITY-FAILURE TO TRAIN**<br>8.  **SVIOLATIONS OF 42 USC § 1983 – FOURTEENTH AMENDMENT – INDIVIDUAL LIABILITY—** |

OFFICIAL POLICY

9.  VIOLATIONS OF 42 USC § 1983 – FOURTEENTH AMENDMENT – INDIVIDUAL LIABILITY— EXCESSIVE FORCE

10. VIOLATIONS OF 42 USC § 1983 – FOURTEENTH AMENDMENT – INDIVIDUAL LIABILITY – INTERFERENCE WITH FAMILIAL ASSOCIATION

11. SECTION 1983 CLAIM VIOLATION OF CIVIL RIGHTS - SECTION 1983

12. CRUEL AND UNUSUAL PUNISHMENT - EIGHT AMENDMENT

**DEMAND FOR JURY TRIAL**

Plaintiff GUILLERMO GUERRERO, an individual, alleges on information and belief:

## I.   INTRODUCTION

1.    Plaintiff GUERRERO brings this action against Defendants alleging violations of 42 U.S.C. § 1983. Section 1983 establishes that every person who, under color of any state, ordinance, regulation, custom, or usage, of any State or Territory or the District of Colombia subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws shall be liable to the party injured in an action at law.

2.    This case is brought under Section 1983 based upon the fact that the named Alameda County DEPUTY SHERIFF G. STEVENS (DEPUTY STEVENS), while acting under color of law, negligently and unreasonably used unnecessary force against GUERRERO,

AMENDED COMPLAINT FOR DAMAGES

assaulted GUERRERO, and inflicted serious personal injuries on GUERRERO, thereby depriving Plaintiff of his Fourth Amendment right to be free from excessive force.

3.     Plaintiff GUERRERO brings this action against Defendants based on Defendants violations of his Constitutional rights and his resulting injuries. Plaintiff seeks general and compensatory damages, pain and suffering, inconvenience, embarrassment, mental suffering, emotional distress, hospital, medical professional and incidental expenses, for other economic losses, and other special damages, statutory damages, costs and attorney's fees, all of which are made available by statute in an amount to be determined.

## II.  PARTIES

4.     At all relevant times mentioned herein, Plaintiff GUERRERO was a resident of the City of Hayward, County of Alameda.

5.     At all relevant times mentioned herein, Defendants COUNTY OF ALAMEDA (COUNTY) and ALAMEDA COUNTY SHERIFF'S DEPARTMENT (SHERIFF'S DEPARTMENT) are municipal corporations organized and existing under the laws of the State of California.

6.     At all relevant times mentioned herein, Defendant THE SHERIFF OF THE ALAMEDA COUNTY SHERIFF'S DEPARTMENT, GREGORY J. AHERN, ("SHERIFF") and DEPUTY STEVENS were employed by the Defendants COUNTY and SHERIFF'S DEPARTMENT and were acting in the course and scope of their employment for such municipal corporations and under color of state law.

7.     The true names and capacities, whether individual, plural, corporate, partnership, associate, or otherwise, of DOES 1 through 10, inclusive, are unknown to Plaintiff who therefore sue said Defendants by such fictitious names. The full extent of the facts linking such fictitiously sued Defendant is unknown to Plaintiff. Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated herein as a DOE was, and is, negligent, or in some other actionable manner, responsible for the events and happenings hereinafter referred to, and thereby negligently, or in some other actionable manner, legally and proximately caused the hereinafter described injuries and damages to Plaintiff. Plaintiff will hereafter seek leave of the Court to amend

AMENDED COMPLAINT FOR DAMAGES

this Complaint to show the Defendants true names and capacities after the same have been ascertained. Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, Defendants and DOES 1 through 10, inclusive, and each of them, were agents, servants, employees, successors in interest, and/or joint ventures of their co-Defendants, and were, as such, acting within the course, scope and authority of said agency, employment, and/or venture, and that each and every Defendant, as aforesaid, when acting as a principal, was negligent in the selection and hiring, training, and supervision of each and every other Defendant as an agent, servant, employee, successor in interest, and/or joint venture.

### III. JURISDICTION AND VENUE

8.     This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 42 U.S.C. 1343 because this action arises under 42 U.S.C. 1983.

9.     Venue in this judicial district is proper under 28 U.S.C. § 1391 in that this is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

### IV. GENERAL ALLEGATIONS

10.     This Complaint concerns an incident occurring during the afternoon hours of August 8, 2017, at the International Oakland Airport in Oakland where defendant DEPUTY STEVENS used excessive force against GUERRERO.

11.     GUERRERO drove to the International Oakland Airport to pick up his wife and one-year-old son from a flight. GUERRERO drove-up to the ten-minute white curb and parked. Airport Traffic Officer A. Saecha told him that he could not park at this location and cited him a ticket. GUERRERO told Officer A. Saecha that he would like to speak to his supervisor because he GUERRERO had been parked for less than ten minutes before getting a traffic ticket. Officer A. Saecha did not call his supervisor; instead, he called DEPUTY STEVENS to respond to GUERRERO. DEPUTY STEVENS approached GUERRERO and yelled at him for parking at the white curb. GUERRERO explained that he had been properly parked for less than ten minutes. As GUERRERO proceeded to walk

AMENDED COMPLAINT FOR DAMAGES

away, DEPUTY STEVENS told GUERRERO to give him a "high-five." GUERRERO raised his right arm and DEPUTY STEVENS forcefully grabbed and twisted GUERRERO's right arm causing him severe injuries. At this time, DEPUTY STEVENS told GUERRERO "If I want to put your face on the ground I can" ("Subject Incident"). GUERRERO was admitted to the Alameda County Medical Center's emergency room. GUERRERO has been referred to and treated by orthopedics, physical therapist, occupational therapist, and other medical providers.

12.   Captain Christy of Internal Affairs for COUNTY investigated GUERRERO'S complaint of excessive force and found that DEPUTY STEVENS did in fact use excessive force against GUERRERO.

13.   Shortly before the Subject Incident, DEPUTY STEVENS had been placed on administrative leave for a previous civil rights incident. Management for SHERIFF'S DEPARTMENT told GUERRERO to obtain a copy of DEPUTY STEVENS' personnel file to learn in detail DEPUTY STEVENS poor history in violating civil rights. Management for COUNTY is unsatisfied with DEPUTY STEVENS performance.

14.   Shortly after the instant lawsuit was served, SHERIFF had a meeting with his subordinate supervisors. SHERIFF told his subordinate supervisors that they must change their training practices because their current policy does not properly train their deputies in the use of force and that they must pay better attention to this. SHERIFF advised his subordinate supervisors to talk to their subordinates about this change in policy.

15.   In the last three years, Defendants COUNTY, SHERIFF'S DEPARTMENT, and SHERIFF have received over forty-one excessive force claims. Below is a description of twenty different cases.

16. In November 2015, Alameda County sheriff deputies were captured on video aggressively beating a man with batons in San Francisco's Mission District. Two deputies were criminally charged for this. The Alameda County Sheriff's Office settled this case for $5.5 million.

17. In April 2015, plaintiffs alleged being falsely arrested and mistreated by Alameda County sheriff deputies at Santa Rita Jail. Plaintiffs were placed in very over-crowded cells with no room to sit or lie down and delayed processing. This case settled

AMENDED COMPLAINT FOR DAMAGES

for $430,000.

18. In 2014, David Goins was in his home in San Lorenzo when he was shot and killed by deputies of the Alameda County Sheriff's Department. Goins refused to leave with paramedics and pushed a paramedic. Deputies then rammed the door open and shot Goins without warning. This excessive force case settled for $1.29 million.

19. In 2010, the County of Alameda settled a wrongful death civil rights case for $8.3 million with the family of Martin Harrison who died in Santa Rita Jail while suffering from alcohol withdrawals.

20. In November 2016, the Alameda County Sheriff's department settled a case with the family of JaCrorey Calhoun for $950,000. Calhoun was shot and killed by an Alameda County sheriff deputy during a suspect search.

21. In May 2015, the Alameda County Sheriff's Office settled another civil rights lawsuit relating to the attack of a bystander.

22. In November 2013, Alameda County deputy sheriffs ordered their dog to attack a suspect after the suspect refused to comply with deputies' commands to lie down despite suspect's recent knee surgery. The case settled.

23. In 2014, the Alameda County Sheriff's Office settled another civil rights lawsuit involving deputies who pointed their guns at a woman with a baby in her hands and knocked a man to the ground injuring his shoulder.

24. In March 2015, Plaintiff claimed the wrongful death of their fifty year-old family member in jail who was repeatedly hit with a taser and later died from the trauma. This case settled for $4,050,000.

25. In November 2015, plaintiff alleged to have been constantly tased and vicioulsy punched in the face numerous times by several Alameda County deputies. The case settled.

26. In January 2016, plaintiff alleged that a deputy of the Alameda County Sheriff's Department assaulted, battered and used excessive force on plaintiff when subduing him. His medical lien was extensive. The case settled for $900,000.

27. In February 2016, plaintiff claimed civil rights violations after Alameda County deputies walked into the garage where she lived and their K-9 grabbed her hand,

AMENDED COMPLAINT FOR DAMAGES

causing severe puncture wounds, deputies handcuffed her as she bled. This case settled for $150,000.

28.   In April 2016, plaintiff alleged that Alameda County deputies assaulted and battered him and used excessive force when subduing him. Plaintiff suffered a fractured ankle that later became infected. This case settled for $100,000.

29. In June 2016, claimant alleged to have been handcuffed and thrown to the ground by Alameda County deputies. Her injuries included a concussion, scraped face, and shoulder injuries. This case settled.

30.   In August 2016, plaintiff alleged to have been beaten and tased by Alameda County deputies who responded to a text message violation of a restraining order. Plaintiff was hit with a baton on his head, neck and lower back. Then deputies hit plaintiff with bare fists until plaintiff bled. This case settled for $250,000.

31. In August 2016, claimant alleged to have been falsely arrested for refusing to leave a state building while protesting. When placed into custody Alameda County deputies used excessive force and put her into filthy crowded cells with no working toilets. This case settled for $75,000.

32. In January 2017, plaintiff claimed that the wrongful death of her son was caused by Alameda County Sheriff deputy who shot her son in the back of his head as he ran away unarmed. Plaintiff claimed excessive force and negligence. This case settled for over $1,000,000.

33. In August 2017, claimant alleged to have sustained severe injuries after Alameda County deputies used excessive force against him. This case settled for $40,000.

34. In August 2016, claimant filed suit alleging injuries caused by Alameda County Sheriff deputies at Santa Rita Jail who assaulted him while he was sitting on the toilet with his pants down. He sustained head injuries, three broken ribs, nerve damage, post-traumatic stress disorder and psychological trauma. Plaintiff is asking for $2,000,000.

35.   Currently, there is a pending case involving six women that were in jail when they were forced to give birth by themselves without a medical doctor. They filed suit for

AMENDED COMPLAINT FOR DAMAGES

violation of their civil rights for denying them medical care, nutritious food, warm clothing, and fresh air. This case is in the process of settling.

36. Over the last three years, the COUNTY, SHERIFF'S DEPARTMENT, and SHERIFF have settled at least forty-one excessive force claims. In the last three years, it has paid a minimum of $15.5 million in settlements and judgments—more than any other law enforcement agency in the region. The settlements and judgments include seventeen cases relating to excessive force by Alameda County Sheriff deputies. Fourteen cases involving civil rights violations in jails, including $4.6 million paid for five in-custody deaths. Defendants have also paid more than $3 million in four cases involving shootings by deputies, three of which were fatal.

37. GUERRERO'S Amended Complaint is analogous to *Sullivan v. City of Berkley*, No. C 17-06051, 2018 WL 48901, at 7 (N.D. Cal. Jan. 19, 2018) where the undersigned judge found that a complaint describing twelve separate instances was sufficient to state a plausible practice or custom. GUERRERO has described twenty separate instances. Making his Amended Complaint a stronger complaint than plaintiff's in Sullivan.

38.   The above described list of twenty civil rights/excessive force claims that COUNTY, SHERIFF'S DEPARTMENT, and SHERIFF have defended shows that the Subject Incident is not an isolated or sporadic incident. GUERRERO's claims against COUNTY and SHERIFF'S DEPARTMENT is founded upon practices of sufficient duration, frequency, and consistency that the conduct has become a traditional method of carrying out policy. This is evidence by the fact that in only the last three years Defendants COUNTY, SHERIFF'S DEPARTMENT and SHERIFF have settled over forty-one excessive force cases and have paid over $15.5 to resolve them. No other law enforcement agency in the region has had to defend this many excessive force cases. The above stated facts show that Defendants' policy, pattern, or custom was so persistent and widespread that it became a traditional method of carrying out policy. Plaintiff GUERRERO's description of twenty separate cases against Defendants is sufficient to state a plausible practice or custom of civil rights/excessive force violations by said Defendants.

39.   At the meeting following the Subject Incident, SHERIFF admitted that their current policy inadequately trains their deputies on the use of force. To remedy the situation, SHERIFF simply told his supervisor subordinates to tell their subordinates to pay more attention to this issue. This shows Defendants COUNTY, SHERIFF'S DEPARTMENT, and SHERIFF'S deliberate indifference to the constitutional rights of persons like GUERRERO.

40.   On July 14, 2015 Defendants COUNTY, SHERIFF'S DEPARTMENT, and SHERIFF issued "Alameda County Sheriff's Office General Order" number 1.05 relating to the use of force. Nowhere in the Order does it state that deputies shall not use force when a subject is cooperating and complying with a deputy's verbal commands. At all times during the Subject Incident, GUERRERO was respectful and cooperating with DEPUTY STEVENS. At no time did GUERRERO initiate a fighting stance, charge at DEPUTY STEVENS or verbally or physically indicate intent to commit an assault on DEPUTY STEVENS. Nor did GUERRERO at any time attempt to interfere with DEPUTY STEVENS actions by inflicting pain or physical injury on DEPUTY STEVENS. To the contrary, after GUERRERO explained his position to DEPUTY STEVENS he proceeded to look for his family. Defendants COUNTY, SHERIFF'S DEPARTMENT and SHERIFF should have trained their deputies, including DEPUTY STEVENS, in not using force on any individual who does not resist and who cooperates and complies with directions. Defendants COUNTY, SHERIFF'S DEPARTMENT and SHERIFF'S failure to train deputies, including DEPUTY STEVENS, as described shows a deliberate indifference to GUERRERO'S civil rights of being free of force.

41.   The Subject Incident results from COUNTY, SHERIFF'S DEPARTMENT, and SHERIFF'S official policy, pattern, or practice. The Subject Incident is sufficiently connected to COUNTY, SHERIFF'S DEPARTMENT, and SHERIFF'S policy, pattern, or practice.

### FIRST CLAIM

**PERSONAL INJURY (BATTERY)**

**(By Plaintiff GUILLERMO GUERRERO Against DEPUTY SHERIFF G. STEVENS and DOES 1 through 10, Inclusive)**

- 9 -

42.     Plaintiff restates and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

43.     Plaintiff GUERRERO is informed and believes, and thereupon alleges, that Defendant DEPUTY STEVENS willfully and unlawfully used force upon the person of GUERRERO by severely injuring him. At the time of the aforementioned battery, GUERRERO posed no threat to DEPUTY STEVENS or anyone else whatsoever.

44.     The aforementioned acts of DEPUTY STEVENS were done by them knowingly, intentionally, and maliciously, for the purpose of harassment, oppression and inflicting injury upon GUERRERO and in reckless, wanton and callous disregard of his safety, security, and civil rights.

45.     As a direct and proximate result of the aforesaid conduct of DEPUTY STEVENS and the resultant batter, GUERRERO has suffered general and compensatory damages, pain and suffering, inconvenience, embarrassment, mental suffering, emotional distress, hospital, medical professional and incidental expenses, for other economic losses, and other special damages, statutory damages, costs and attorney's fees, all of which are made available by statute in an amount to be determined.

## SECOND CLAIM

### PERSONAL INJURY (NEGLIGENCE)

### (By Plaintiff GUILLERMO GUERRERO Against DEPUTY SHERIFF G. STEVENS, and DOES 1 through 10, Inclusive)

46. Plaintiff restates and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

47. Plaintiff GUERRERO is informed, believes, and thereon alleges that, at all times relevant and mentioned herein, Defendant DEPUTY STEVENS and DOES 1 through 10, inclusive and each of them, owed a duty of care to all reasonably foreseeable people, including GUERRERO, to carry out their law enforcement duties in a reasonable manner, including training and the use of any force whatsoever.

48.     GUERRERO is informed, believes, and thereon alleges that, at all times relevant and mentioned herein, Defendant DEPUTY STEVENS and DOES 1 through 10,

inclusive, and each of them, carelessly and negligently carried out their law enforcement duties, and particularly used their authority in a reckless way wherein DEPUTY STEVENS used excessive force on GUERRERO who posed no threat of harm to DEPUTY STEVENS or any person in the Oakland International Airport.

49.      GUERRERO is informed, believes, and thereon allege that, at all times relevant and mentioned herein, said careless, negligent, reckless and unlawful conduct by DEPUTY STEVENS and DOES 1 through 10, inclusive, and each of them, was the direct, legal and proximate cause of injuries of GUERRERO and his resulting damages herein alleged.

50.      GUERRERO is further informed, believes, and thereon alleges that, at all times relevant and mentioned herein, DEPUTY STEVENS breached these duties by failing to adequately carry out his law enforcement duties including training in the use of force.

51.      Defendant DEPUTY STEVENS further breached his duty because within the SHERIFF'S DEPARTMENT, there was a custom, policy and practice, whether express or implied, oral or written, that allowed all of the conduct outlined in this claim to occur.

52.      As a direct and proximate result of the aforesaid conduct of Defendant DEPUTY STEVENS and the resultant batter, GUERRERO has suffered general and compensatory damages, pain and suffering, inconvenience, embarrassment, mental suffering, emotional distress, hospital, medical professional and incidental expenses, for other economic losses, and other special damages, statutory damages, costs and attorney's fees, all of which are made available by statute in an amount to be determined.

## THIRD CLAIM

### VIOLATION OF CIVIL CODE § 52.1

### (By Plaintiff GUILLERMO GUERRERO Against DEPUTY SHERIFF G. STEVENS, and DOES 1 through 10, Inclusive)

53. Plaintiff restates and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

54. Plaintiff GUERRERO alleges that Defendant DEPUTY STEVENS, and each of

AMENDED COMPLAINT FOR DAMAGES

them, interfered by threats, intimidation and/or coercion, with GUERRERO'S exercise and enjoyment of his rights secured by the Constitution of the United States and the State of California, including interference with his right to be secure in his person and free from the use of excessive force and the right of protection from bodily restrain and harm.

55. The conduct of DEPUTY STEVENS was done within the course and scope of his employment, agency and/or service with Defendants COUNTY, SHERIFF'S DEPARTMENT, and SHERIFF. Defendants COUNTY and SHERIFF'S DEPARTMENT and each of them are therefore vicariously liable for same under *Government Code* § § 815.2, 815.3 and 820.

56. As a direct and proximate result of the aforesaid conduct of DEPUTY STEVENS and the resultant batter, GUERRERO has suffered general and compensatory damages, pain and suffering, inconvenience, embarrassment, mental suffering, emotional distress, hospital, medical professional and incidental expenses, for other economic losses, and other special damages, statutory damages, costs and attorney's fees, all of which are made available by statute in an amount to be determined.

### FOURTH CLAIM

### ASSAULT

### (By Plaintiff GUILLERMO GUERRERO Against DEPUTY SHERIFF G. STEVENS, and DOES 1 through 10, Inclusive)

57. Plaintiff restates and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

58. Plaintiff GUERRERO is informed and believes, and thereupon alleges, that Defendant DEPUTY STEVENS unlawfully attempted to commit injury on GUERRERO when DEPUTY STEVENS told GUERRERO "If I want to I can put your face on the ground." Defendant DEPUTY STEVENS had the ability to commit violent injuries on GUERRERO. At the time of the aforementioned assault, GUERRERO posed absolutely no threat to DEPUTY STEVENS or anyone else.

59. The conduct of DEPUTY STEVENS was done within the course and scope of his employment agency and/or service with Defendants COUNTY and SHERIFF'S

DEPARTMENT.

60. The aforementioned acts of DEPUTY STEVENS were done by him knowingly, intentionally, and maliciously, for the purpose of harassment, oppression and inflicting injury upon GUERRERO and in reckless, wanton and callous disregard of his safety, security, and civil rights.

61. As a direct and proximate result of the aforesaid conduct of DEPUTY STEVENS, GUERRERO sustained injuries.

## FIFTH CLAIM

### VIOLATIONS OF 42 USC § 1983 – FOURTH AMENDMENT – INDIVIDUAL LIABILITY (By Plaintiff GUILLERMO GUERRERO Against THE SHERIFF OF THE ALAMEDA COUNTY SHERIFF'S DEPARTMENT, GREGORY J. AHERN, DEPUTY SHERIFF G. STEVENS, and DOES 1 through 10, Inclusive)

62. Plaintiff restates and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

63. Defendant SHERIFF knew that prior to the Subject Incident DEPUTY STEVENS had been placed on administrative leave for civil rights/excessive force violations. As stated above, management advised GUERRERO to obtain a copy of DEPUTY STEVENS' personnel file as it will show that he has a poor history of violating civil rights. Despite this, SHERIFF negligently or willfully retained DEPUTY STEVENS. GUERRERO described twenty different instances in which claims of excessive force were asserted against Defendants COUNTY, SHERIFF'S DEPARTMENT, and SHERIFF over the last three years. SHERIFF coincided that his policy is ineffective and that it must be changed.

64. As such, SHERIFF has caused or participated in GUERRERO'S constitutional deprivation of being free from excessive force. SHERIFF'S negligent retention of DEPUTY STEVENS deprived GUERRERO of his constitutional rights. Therefore, there is a sufficient casual connection between GUERRERO'S constitutional deprivation and SHERIFF'S deficient policy.

65.  Defendants, while acting under color of law, deprived Plaintiff GUERRERO of his civil rights by violating his rights under the Fourth Amendment to be free from excessive force, detention and arrest not based on reasonable suspicion or probable cause.

66. The above acts and omissions, while carried out under color of law,

have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order. The above acts and omissions were consciously chosen from among various alternatives, thereby justifying the awarding of exemplary and punitive damages against each of the individual defendants in an amount to be determined according to proof at trial.


### SIXTH CLAIM

### VIOLATIONS OF 42 USC § 1983–ENTITY LIABILITY- OFFICIAL POLICY

### (By Plaintiff GUILLERMO GUERRERO Against COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S DEPARTMENT, and DOES 1 through 10, Inclusive)

67.     Plaintiff restates and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs

68.     Defendants COUNTY and SHERIFF'S DEPARTMENT had actual notice that DEPUTY STEVENS had a poor history of violating civil rights yet continued to employ him.

67. Shortly after the Subject Incident, SHERIFF had a meeting with his subordinate supervisors. SHERIFF told his subordinate supervisors that they must change their training practices because their current policy does not properly train their deputies on the use of force and that they must pay attention to this. SHERIFF advised his subordinate supervisors to talk to their subordinates about this change in policy. At the meeting SHERIFF also stated that these cases are costing a lot of money.

AMENDED COMPLAINT FOR DAMAGES

68.   In the last three years, Defendants COUNTY, SHERIFF'S DEPARTMENT, and SHERIFF have had over forty-one excessive force cases. Below is a description of twenty different instances of excessive force claims against Defendants.

69. In November 2015, Alameda County sheriff deputies were captured on video aggressively beating a man with batons in San Francisco's Mission District. Two deputies were criminally charged for this. The Alameda County Sheriff's Office settled this case for $5.5 million.

70. In April 2015, plaintiffs alleged being falsely arrested and mistreated by Alameda County sheriff deputies at Santa Rita Jail. Plaintiffs were placed in very over-crowded cells with no room to sit or lie down and delayed processing. This case settled for $430,000.

71. In 2014, David Goins was in his home in San Lorenzo when he was shot and killed by deputies of the Alameda County Sheriff's Department. Goins refused to leave with paramedics and pushed a paramedic. Deputies then rammed the door open and shot Goins without warning. This excessive force case settled for $1.29 million.

72. In 2010, the County of Alameda settled a wrongful death civil rights case for $8.3 million with the family of Martin Harrison who died in Santa Rita Jail while suffering from alcohol withdrawals.

73. In November 2016, the Alameda County Sheriff's department settled a case with the family of JaCrorey Calhoun for $950,000. Calhoun was shot and killed by an Alameda County sheriff deputy during a suspect search.

74. In May 2015, the Alameda County Sheriff's Office settled another civil rights lawsuit relating to the attack of a bystander.

75. In November 2013, Alameda County deputy sheriffs ordered their dog to attack a suspect after the suspect refused to comply with deputies' commands to lie down despite suspect's recent knee surgery. The case settled.

76. In 2014, the Alameda County Sheriff's Office settled another civil rights lawsuit involving deputies who pointed their guns at a woman with a baby in her hands and knocked a man to the ground injuring his shoulder.

77. In March 2015, Plaintiff claimed the wrongful death of their fifty year-old

family member in jail who was repeatedly hit with a taser and later died from the trauma. This case settled for $4,050,000.

78. In November 2015, plaintiff alleged to have been constantly tased and vicioulsy punched in the face numerous times by several Alameda County deputies. The case settled.

79. In January 2016, plaintiff alleged that a deputy of the Alameda County Sheriff's Department assaulted, battered and used excessive force on plaintiff when subduing him. His medical lien was extensive. The case settled for $900,000.

80. In February 2016, plaintiff claimed civil rights violations after Alameda County deputies walked into the garage where she lived and their K-9 grabbed her hand, causing severe puncture wounds, deputies handcuffed her as she bled. This case settled for $150,000.

82. In April 2016, plaintiff alleged that Alameda County deputies assaulted and battered him and used excessive force when subduing him. Plaintiff suffered a fractured ankle that later became infected. This case settled for $100,000.

83. In June 2016, claimant alleged to have been handcuffed and thrown to the ground by Alameda County deputies. Her injuries included a concussion, scraped face, and shoulder injuries. This case settled.

84. In August 2016, plaintiff alleged to have been beaten and tased by Alameda County deputies who had responded to a text message violation of a restraining order. Plaintiff was hit with a baton on his head, neck and lower back. Then deputies hit plaintiff with bare fists until plaintiff bled. This case settled for $250,000.

85. In August 2016, claimant alleged to have been falsely arrested for refusing to leave a state building while protesting. When placed into custody Alameda County deputies used excessive force and put her into filthy crowded cells with no working toilets. This case settled for $75,000.

86. In January 2017, plaintiff claimed that the wrongful death of her son was caused by Alameda County Sheriff deputy who shot her son in the back of his head as he ran away unarmed. Plaintiff claimed excessive force and negligence. This case settled for over $1,000,000.

AMENDED COMPLAINT FOR DAMAGES

87. In August 2017, claimant alleged to have sustained severe injuries after Alameda County deputies used excessive force against him. This case settled for $40,000.

88. In August 2016, claimant filed suit alleging injuries caused by Alameda County Sheriff deputies at Santa Rita Jail who assaulted him while he was sitting on the toilet with his pants down. He sustained head injuries, three broken ribs, nerve damage, post-traumatic stress disorder and psychological trauma. Plaintiff is asking for $2,000,000.

89. Currently, there is a pending case involving six women that were pregnant in jail who were forced to give birth by themselves without a medical doctor. They filed suit for violation of their civil rights for denying them medical care, nutritious food, warm clothing, fresh air. This case is in the process of settling.

90. Over the last three years, the COUNTY, SHERIFF'S DEPARTMENT, and SHERIFF have settled at least forty-one excessive force claims and has paid a minimum of $15.5 million in settlements and judgments—more than any other law enforcement agency in the region. The settlements and judgments include seventeen cases relating to excessive force by Alameda County Sheriff deputies. Fourteen cases involving civil rights violations in jails, including $4.6 million paid for five in-custody deaths. Defendants have also paid more than $3 million in four cases involving shootings by deputies, three of which were fatal.

91. At no time did GUERRERO exhibit any verbal or physical behavior to justify DEPUTY STEVENS actions. Defendants municipal policy fails to prohibit the use of force against a person who does not exhibit any threatening behavior. Had Defendants included this prohibition in their official policy and had properly trained DEPUTY STEVENS in the handling of this, the Subject Incident would have probably not occurred.

92. The Subject Incident is the result of Defendants COUNTY and SHERIFF'S DEPARTMENT'S official policy, pattern or practice. DEPUTY STEVENS excessive force against GUERRERO is not an isolated or sporadic incident. DEPUTY STEVENS has committed other Section 1983 violations and has been reprimanded for it. Defendants COUNTY and SHERIFF'S DEPARTMENT have a well-documented history of

AMENDED COMPLAINT FOR DAMAGES

using excessive force against the public. The forty-one plus claims of excessive force against Defendants over the last three years have been frequent and consistent to the point where it has become a traditional method of carrying out policy by Defendants COUNTY, SHERIFF'S DEPARTMENT and SHERIFF.

93.   Defendants official policy or widespread or longstanding practice or custom caused the deprivation of GUERRERO'S rights.

94. As a direct and proximate result of the foregoing, Plaintiff GUERRERO sustained injuries and damages as proved.

**SEVENTH CLAIM**

**VIOLATIONS OF 42 USC § 1983-ENTITY LIABILITY-FAILURE TO TRAIN**

**(By Plaintiff GUILLERMO GUERRERO Against COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S DEPARTMENT, and DOES 1 through 10, Inclusive)**

95. Plaintiff restates and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

96. Plaintiff is informed and believes and thereon alleges that, at all times herein mentioned, the act or failure to act of DEPUTY STEVENS deprived Plaintiff of his particular rights under the United States Constitution as described.

97. SHERIFF has been the Sheriff for the Alameda County Sherriff's Department since 2006. The Subject Incident occurred in 2018. SHERIFF has had approximately twelve years to better train his deputies in the use of force. SHERIFF'S deficient policy acknowledgment further shows Defendants COUNTY and SHERIFFS DEPARTMENT'S deliberate indifference to GUERRERO's constitutional right to be free from excessive force.

97. The training polices of Defendants COUNTY and SHERIFF'S DEPARTMENT were not adequate to train its deputies, particularly, DEPUTY STEVENS, to handle the usual and recurring situations that deputies must deal with.

98. As mentioned, over the last three years there has been over forty-one excessive force incidents against Defendants and approximately $15.5 million have been paid on these claims. Defendants were deliberately indifferent to the known or obvious

- 18 -

consequences of Defendants failure to train its deputies, particularly, DEPUTY STEVENS.

100. The failure of the Defendants to provide adequate training caused the deprivation of GUERRERO'S rights by DEPUTY STEVENS; that is, Defendants failure to train is so closely related to the deprivation of his rights as to be the moving force that caused the ultimate injury.

101. As a direct and proximate result of the foregoing, GUERRERO sustained injuries and damages as proved.

### EIGHT CLAIM

**VIOLATIONS OF 42 USC § 1983 – FOURTEENTH AMENDMENT – INDIVIDUAL LIABILITY—OFFICIAL POLICY**

**(By Plaintiff GUILLERMO GUERRERO Against THE SHERIFF OF THE ALAMEDA COUNTY SHERIFF'S DEPARTMENT, GREGORY J. AHERN, DEPUTY SHERIFF G. STEVENS, and DOES 1 through 10, Inclusive)**

102. Plaintiff restates and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

103. Defendants made an intentional decision in not having an adequate official policy in place relating to the use of force. This failure put Plaintiff GUERRERO at a substantial risk of serious bodily injury or death. A reasonable sheriff under the same or similar circumstances would have appreciated the high degree of risk involved in not having as adequate official policy. Other departments have proper official policy and training in place to avoid incidents like the Subject Incident. For example, other departments include factors that an officer should consider before using any force. These factors include the immediacy and severity of the threat to officers and others, the conduct of the individual being confronted, whether the individual is cooperating, respectful, etc. Defendants' official policy did not include such factors. SHERIFF did not take reasonable available measures to abate the risk. SHERIFF'S failure in not having an official policy delineating the prohibition of force against a person who is following a deputies commands caused DEPUTY STEVENS to use assault and force on GUERRERO without any justification.

104.     Defendants deprived GUERRERO of rights secured by the Due Process Clause of the Fourteenth Amendment, causing GUERRERO to be deprived of substantive and procedural due process.

105.     The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order. The above acts and omissions were consciously chosen from among various alternatives, thereby justifying the awarding of exemplary and punitive damages against each of the individual defendants in an amount to be determined according to proof at trial.

106.     As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as proved.

### NINTH CLAIM

### VIOLATIONS OF 42 USC § 1983 – FOURTEENTH AMENDMENT – INDIVIDUAL LIABILITY—EXCESSIVE FORCE

### (By Plaintiff GUILLERMO GUERRERO Against DEPUTY SHERIFF G. STEVENS, and DOES 1 through 10, Inclusive)

107.  Plaintiff restates and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

108.  Defendant DEPUTY STEVENS made an intentional decision in grabbing and twisting Plaintiff GUERRERO'S right arm without any justification. At no time did GUERRERO verbally or physically threatened DEPUTY STEVENS. A reasonable deputy in the same or similar circumstances would have responded to GUERRERO'S traffic ticket concern without using any force. Captain Christy of Internal Affairs for COUNTY found that DEPUTY STEVENS did use excessive force against GUERRERO. Other deputies would have appreciated the high degree of risk involved in grabbing and twisting an individual's right arm under said circumstances. Other deputies would have cited

GUERRERO a ticket without using any force.

109.     Defendant DEPUTY STEVENS deprived GUERRERO of rights secured by the Due Process Clause of the Fourteenth Amendment, causing GUERRERO to be deprived of substantive and procedural due process.

110.     The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order. The above acts and omissions were consciously chosen from among various alternatives, thereby justifying the awarding of exemplary and punitive damages against each of the individual defendants in an amount to be determined according to proof at trial.

111.     As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as proved.

## TENTH CLAIM

### VIOLATIONS OF 42 USC § 1983 – FOURTEENTH AMENDMENT – INDIVIDUAL LIABILITY – INTERFERENCE WITH FAMILIAL ASSOCIATION

(By Plaintiff GUILLERMO GUERRERO Against THE SHERIFF OF THE ALAMEDA COUNTY SHERIFF'S DEPARTMENT, GREGORY J. AHERN, DEPUTY SHERIFF G. STEVENS, and DOES 1 through 10, Inclusive)

112.     Plaintiff restates and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

113.     Plaintiff GUERRERO had a constitutionally protected right to familial association. Given Defendants deficient official policy and deliberate indifference to train its deputies, including, DEPUTY STEVENS, GUERRERO sustained injuries that separated him from his wife and kids as he has been forced to attend numerous medical procedures and has undergone a lengthy recovery process. Defendants DEPUTY STEVENS, SHERIFF,

and DOES 1 through 10, Inclusive, made an intentional decision to deprive GUERRERO of his rights under the Due Process Clause of the Fourteenth Amendment to be free from governmental interference with a familial relationship. Had Defendants established an adequate official policy and properly trained DEPUTY STEVENS the Subject Incident would have probably not occurred.

114.    The above acts and omissions, while carried out under color of law, have no justification or excuse in law, and instead constitute a gross abuse of governmental authority and power, shock the conscience, are fundamentally unfair, arbitrary and oppressive, and unrelated to any activity in which governmental officers may appropriately and legally undertake in the course of protecting persons or property, or ensuring civil order. The above acts and omissions were consciously chosen from among various alternatives, thereby justifying the awarding of exemplary and punitive damages against each of the individual defendants in an amount to be determined according to proof at trial.

115.    As a direct and proximate result of the foregoing, Plaintiff sustained injury and damage as proved.

## ELEVENTH CLAIM

### SECTION 1983 CLAIM

**(By Plaintiff GUILLERMO GUERRERO Against SUPERVISORY DEFENDANT THE SHERIFF OF THE ALAMEDA COUNTY SHERIFF'S DEPARTMENT, GREGORY J. AHERN, DEPUTY SHERIFF G. STEVENS, and DOES 1 through 10, Inclusive)**

116.  Plaintiff restates and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

117.    The act or failure to act, as described above, of supervisory SHERIFF'S subordinates, specifically, DEPUTY STEVENS, deprived Plaintiff of his particular rights under the United States Constitution.

118.    Supervisory SHERIFF set in motion a series of acts by and through his subordinates, specifically, DEPUTY STEVENS, or knowingly refused to terminate a series of acts by DEPUTY STEVENS, that SHERIFF knew or should have known would cause his

subordinate, DEPUTY STEVENS, to deprive persons like GUERRERO of their rights.

119.    Supervisory SHERIFF knew or should have known that his subordinate DEPUTY STEVENS had been placed on leave for other incidents relating to excessive force. SHERIFF knew or reasonably should have known, that subordinate DEPUTY STEVENS required better training. SHERIFF failed to act to prevent DEPUTY STEVENS from using excessive force. After the instant lawsuit was filed, SHERIFF acknowledged at a management meeting that the training received by his deputies is insufficient.

120.    SHERIFF had disregarded the known or obvious consequence that a particular training deficiency or omission would result in. That deficiency or omission actually caused DEPUTY STEVENS to deprive GUERRERO of his constitutional rights.

121.    SHERIFF engaged in conduct that showed a reckless or callous indifference to the deprivation by his subordinates, specifically, DEPUTY STEVENS, of the rights of others.

122.    SHERIFF'S conduct was so closely related to the deprivation of GUERRERO'S rights as to be the moving force that caused GUERRERO'S injuries, including GUERRERO.

123.    As a direct and proximate result of the foregoing, GUERRERO sustained injury and damage as proved.

## TWELFTH CLAIM

### VIOLATION OF CIVIL RIGHTS - SECTION 1983

### CRUEL AND UNUSUAL PUNISHMENT - EIGHT AMENDMENT

### (By Plaintiff GUILLERMO GUERRERO Against COUNTY OF ALAMEDA, ALAMEDA COUNTY SHERIFF'S DEPARTMENT, THE SHERIFF OF THE ALAMEDA COUNTY SHERIFF'S DEPARTMENT, GREGORY J. AHERN, DEPUTY SHERIFF G. STEVENS, and DOES 1 through 10, Inclusive)

124.  Plaintiff restates and incorporates herein by reference each and every allegation and statement contained in the prior paragraphs.

125.  Plaintiff GUERRERO'S constitutionally protected rights include, but are not limited to, the right to be free from cruel and unusual punishment, guaranteed by the Eight Amendment to the United States Constitution, made applicable to the states through the

Fourteenth Amendment.

126.    As stated above, Defendants use of excessive force against GUERRERO constitutes a violation of GUERRERO'S Eight Amendment rights, in part, because Defendants failed to have an effective and adequate official policy in place.

127.    As a result of the Subject Incident, GUERRERO has been referred to and treated by orthopedic surgeons, physical therapist, occupational therapist, and other medical providers. He has been attending physical and occupational therapy sessions weekly. He was also undergoing regular injections to his right arm for chronic pain. GUERRERO has numbness and tingling on his right fingers and arm; it worsens throughout the day and sometimes he cannot feel his hand and arm. He suffers from chronic neurological conditions. GUERRERO'S treating neurologist, Kristine Santiano, M.D., of Highland Neurology Clinic, wrote a letter stating:

> "Mr. Guillermo Guerrero has been treated in our clinic for a chronic neurological condition. This condition limits his ability to perform daily activities and has limited ability to work. This impairment is permanent and so activity restrictions are indefinite. Please provide Mr. Guerrero any support services that would compensate for his limited mobility."

128. Defendants' policy and practice in the use of force without any justification was and is a deliberate indifference to GUERRERO'S constitutional rights and violates the prohibition against cruel and unusual punishment under the Eight Amendment to the United States Constitution.

129. At all relevant times, Defendants, in using excessive force, have acted under color of State law to deprive GUERRERO of his constitutionally protected rights including, but not limited to, the right to be free of cruel and unusually punishment, guaranteed by the Eight Amendment to the United States Constitution.

## PRAYER

**WHEREFORE,** Plaintiff GUERRERO requests relief as follows, and according to proof, against each Defendant:

1.    General and compensatory damages in an amount according to proof against all Defendants;

2.    Pain and suffering, inconvenience, mental suffering, embarrassment, emotional distress, hospital, medical professional and incidental expenses, for other economic losses, and other special damages, statutory damages, costs and attorney's fees, all of which are made available by statute in an amount to be determined;

3.    Statutory damages, including damages pursuant to *Civil Code* §§ 52(b)(3), 52(b)(2), and 52.1(b);

4.    Cost of suit and prejudgment interest as awardable by law, against all Defendants;

5.    Attorneys fees, including pursuant to *Civil Code* §§ 52(b)(3) and 52.1 (h) and 42 and 42 USC § 1983;

6.    Punitive damages;

7.    Such other relief as may be warranted or as is just and proper.


DATED:  August 13, 2018               RUVALCABA|ROMERO


/s/ *Sandra Romero*

_____
Sandra Romero
Attorneys for Plaintiff

AMENDED COMPLAINT FOR DAMAGES

1

**DEMAND FOR JURY TRIAL**

2

GUILLERMO GUERRERO hereby demands trial on all causes of action by jury.

3

4

DATED:  August 13, 2018                    RUVALCABA|ROMERO

5

6                                          /s/ *Sandra Romero*

7                                          _____

8                                          Sandra Romero
                                           Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28